**Redacted Version**

Exhibit 4



1612 K Street NW Suite 1100
Washington, DC, 20006
(202) 457-0034
whistleblower.org

November 30, 2023

*Sent via electronic mail*

Honorable Gary C. Peters, Chair
Honorable Rand Paul, Ranking Member
U.S. Senate Committee on Homeland Security
and Governmental Affairs
Washington, D.C. 20510

Honorable Richard J. Durbin, Chair
Honorable Lindsey O. Graham, Ranking
Member
U.S. Senate Committee on the Judiciary
Washington, D.C. 20510

Honorable Mark E. Green, MD, Chair
Honorable Bennie G. Thompson, Ranking
Member
U.S. House of Representatives Committee on
Homeland Security
Washington, DC 20515

> Re:  **Protected Whistleblower Disclosures Regarding the Performance and Oversight Failures of the Medical Services Contract of U.S. Customs and Border Protection with Loyal Source Government Services**

To Whom It May Concern:

We, Government Accountability Project, represent Mr. Troy Hendrickson, a whistleblower and employee of the U.S. Customs and Border Protection (CBP). We share this protected whistleblower disclosure with Congress regarding violations of laws, rules and regulations, gross mismanagement, gross waste of funds, abuse of authority, and substantial and specific danger to public health and safety by Loyal Source Government Services, the sole source contractor responsible for providing medical care to noncitizens in CBP custody, and by the Office of Acquisition (OA) staff who knowingly refused to hold Loyal Source accountable for documented and ongoing performance failures, including but not limited to: severe understaffing by nearly 40% of medical staff needed to provide adequate care to noncitizens in CBP custody; medical providers working without proper clearances and/or medical licenses; payment of millions of dollars in deficient invoices; failures to maintain electronic medical records; breaches of personal identifying information of noncitizens in CBP custody; and allegations of sexual misconduct.

We highlight three significant areas of wrongdoing: (1) serious failures by Loyal Source Government Services to comply with the terms of its $421 million Medical Services Contract to provide medical care to noncitizens at the southern U.S. border, with shocking deficiencies both in the administration of the contract and the provision of medical care; (2) refusal by the Office of Acquisition to exercise its responsibility to hold Loyal Source accountable despite the Office of the Chief Medical Officer (OCMO)'s documented reports and expressed concern about the contractor's serious performance deficiencies; and (3) unlawful retaliation against our client for raising concerns

Exhibit 4 at Page 1

about problems with the contractor's performance and the failure by OA to exercise its oversight responsibility.

Our client is a career civil servant with 14 years of experience as a Contract Officer Representative (COR) and was detailed in 2021 to CBP's newly established Office of the Chief Medical Officer (OCMO) to serve as COR for CBP's Medical Services Contract (MSC). Mr. Hendrickson attempted to raise concerns about Loyal Source's performance failures and to urge that the Office of Acquisition hold the contractor accountable, making reports not only internally to those responsible for the MSC but to the Office of Professional Responsibility. Despite full support from the OCMO staff responsible for programmatic oversight of the contract, OA refused to even issue mandated performance assessments to Loyal Source. OA ultimately removed Mr. Hendrickson from his role as COR for the MSC.

Tragically, a year after Mr. Hendrickson was removed from the COR position, on May 17, 2023, 8-year-old Anadith Reyes Alvarez died while detained in a CBP facility after her mother's repeated pleas for medical care to Loyal Source staff. Had Mr. Hendrickson's and his OCMO colleagues' concerns about Loyal Source been addressed in 2021 or 2022, Anadith might still be alive.

While Mr. Hendrickson is seeking relief under the Whistleblower Protection Act for the unlawful retaliation he suffered for raising concerns about serious and life-threatening waste and abuse, he remains deeply concerned that unless both the performance problems of Loyal Source and the failure by CBP OA hold the contractor accountable are addressed, future tragedies to noncitizens in CBP custody are foreseeable. Indeed, after Anadith's death, CBP replaced the head of the Office of the Chief Medical Officer who had been supporting and echoing Mr. Hendrickson's calls for accountability of the contractor to CBP OA, Office of Acquisition officials received promotions, and Loyal Source remains the contractor for CBP medical services.

Accordingly, we share Mr. Hendrickson's protected whistleblower disclosures with Congress below, and request that you do the following:

- Conduct thorough and prompt oversight into Loyal Source and its ongoing failure to comply with mandated medical care of noncitizens in CBP custody, endangering lives while reaping millions in taxpayer dollars;

- Conduct thorough and prompt oversight into the Office of Acquisition's gross mismanagement and abuse of authority by its refusal to hold Loyal Source accountable for its contract performance failures;

- Ensure that Mr. Hendrickson and any other current or former CBP or Loyal Source employees who have raised or may in the future raise concerns to Congress, internally to managers, to investigators and/or enforcement agencies, or to any other protected recipients, are neither unlawfully restricted or chilled from, nor subject to retaliation for, engaging in protected whistleblowing activity.

Exhibit 4 at Page 2

# Table of Contents

BACKGROUND..................................................................................................................5

    Overview of U.S. Customs and Border Protection's Office of Chief Medical Officer and the Medical Services Contract..............................................................................................5

    Mr. Hendrickson is Detailed to OCMO ........................................................................5

TIMELINE ......................................................................................................................6

    Initial Whistleblowing Activity ......................................................................................6

        *Medical Personnel with Improper Credentials, Expired Licensing, Inadequate Supervision, and Under Pending Investigation* ...........................................................6

        *Invoicing and Payment Without Required Supporting Documentation* ........................6

        *Severe Understaffing of Critical Medical Services*........................................................7

            CO 1 Refuses to Issue Loyal Source a Cure Letter at January 6, 2022 Meeting Despite Nearly 40% Understaffing ...........................................................................7

            To Understand High Turnover Rates, OCMO Solicits Feedback from Former Loyal Source Employees......7

        *Paper Medical Records Lead to Risk of Information Deficiencies* .............................8

        *Loyal Source's Privacy Breach of Noncitizen Personally Identifiable Information* ..............8

    Loyal Source Government Services' Hazardous Understaffing of CBP Medical Services Converges with Issues of Gross Waste............................................................................8

        *Loyal Source's Inflated Profit Margins* .......................................................................9

        *Loyal Source Accounting Error Caused Months of Billing Irregularities* ......................9

    Mr. Hendrickson's Whistleblowing Activity and CO 1's Negligence Escalate in the Spring of 2022 as Mr. Hendrickson Attempts to Use the Contractor Performance Assessment Reporting System (CPARS) to Hold Loyal Source Accountable for Failures to Meet Contract Terms.......................9

        *Overview of the Contractor Performance Assessment Reporting System*............................10

        *OCMO's Responsibility to Hold Loyal Source Accountable for the Company's Dangerous Underperformance* .............................................................................10

            No CPARS Ever Issued By OA ...................................................................................10

            CO 1 Rated Loyal Source "Exceptional" in Unissued Draft CPARS Despite Performance Problems .........11

            OCMO Seeks to Issue CPARS and Downgrade Ratings ...........................................11

            Mr. Hendrickson Submits Draft Downgraded CPARS to Support Ongoing OPR Investigations ...............12

            CO 1 Upgrades CPARS Ratings Against OCMO's Recommendations ........................12

    Retaliation ....................................................................................................................12

        *Events Immediately Preceding CO 1's Retaliation* ......................................................12

            Loyal Source Fails to Report Incident of Sexual Harassment .....................................12

            Executive Order.........................................................................................................13

Exhibit 4 at Page 3

Mr. Hendrickson Reports His Concerns About CO 1's and CO 2's Gross Mismanagement on the Recompete Process to CO 1's Director ........................................................................................... 13

CO 1's Director Shares Mr. Hendrickson's Concerns with CO 1, Culminating in a Hostile Meeting on April 25, 2022 ...................................................................................................................................... 13

OA Responds With Hostility to OCMO's Concerns About OA's Failures to Hold Loyal Source Accountable and Manage the Contract .......................................................................................................... 14

Mr. Hendrickson Reports OA's Hostility and Refusal to Hold Loyal Source Accountable to OPR ............. 14

***CO 1 Removes Mr. Hendrickson From His COR Appointment*** ...................................................... 15

CO 1's Removal of Mr. Hendrickson Violated Union Rules ................................................................. 15

CO 1's Removal of Mr. Hendrickson Violates 5 U.S.C. § 2302 ........................................................... 15

***CO 1 Orders OCMO Not to Pursue a Supplemental Contract to Remedy Staffing Shortages*** ............... 15

***OCMO's Attempts to Keep Mr. Hendrickson as COR, Loyal Source Staffing Shortages Persist Despite Supplemental Small Business Contract, and Continued Retaliation*** ........................................... 15

Retaliation, Gross Waste and Mismanagement of the Supplemental Small Business Contract to Address Staffing Shortages ......................................................................................................................... 16

Ongoing Retaliation in OCMO Program Management Duties ............................................................... 16

OA's Retaliation Against Mr. Hendrickson and OCMO, Refusing to Appoint Hendrickson as COR for Five Year Recompete Medical Services Contract ....................................................................................... 16

***Ongoing Investigations Validate Mr. Hendrickson's Disclosures*** ...................................................... 17

***Concerns of Serious Oversight Failures by GAO, OSC, DHS OIG, and CBP EEO*** ............................... 18

**CONCLUSION** ............................................................................................................................... 19

Exhibit 4 at Page 4

# BACKGROUND

## Overview of U.S. Customs and Border Protection's Office of Chief Medical Officer and the Medical Services Contract

In response to ongoing deaths of children in the custody of CBP, in July 2019 Congress awarded the agency approximately $112 million to improve its medical services. CBP then contracted with Loyal Source, a Florida based staffing company, through U.S. Border Patrol to meet its medical staffing capacity needs. In 2020, the U.S. Government Accountability Office (GAO) issued a report[1] finding deficiencies in CBP's medical care and recommending that CBP improve oversight and direction of its medical efforts, which led the agency to create OCMO and the role of Chief Medical Officer (CMO) that same year.

Following the creation of OCMO, the Medical Services Contract was awarded to Loyal Source for $421 million[2] and transferred under the auspices of OCMO and the programmatic direction of then-CMO Dr. Tarantino. Contract compliance was managed by the Border Enforcement Contracting Division of the CBP Office of Acquisition, with Contract Officer 1 ("CO 1") overseeing the contract.[3]

## Mr. Hendrickson is Detailed to OCMO

Mr. Troy Hendrickson is a career civil servant with 14 years of experience as a Contract Officer Representative (COR).[4] Mr. Hendrickson began his detail with OCMO as the COR on the Medical Services Contract on August 9, 2021. In this role, Mr. Hendrickson held dual roles as OCMO program staff, and as a COR under the CBP Office of Acquisition (OA).

Over the course of his time as COR on the MSC, Mr. Hendrickson's dual reporting to both OA and OCMO left him vulnerable to the tensions that arose between these components over disagreements

---

[1] Government Accountability Office, "Southwest Border: CBP Needs to Increase Oversight of Funds, Medical Care, and Reporting of Deaths," July 14, 2020, https://www.gao.gov/products/gao-20-536.
[2] https://govtribe.com/award/federal-contract-award/delivery-order-v797d30203-70b03c20f00001383. Loyal Source has reportedly received nearly $700 million in federal money from CBP to date. Nick Miroff, "Medical provider vying for border contract faces scrutiny after girl's death," *Washington Post,* November 19, 2023, https://www.washingtonpost.com/immigration/2023/11/19/border-loyal-source-medical-care-migrants/.
[3] Section 1.602-2 of the Federal Acquisition Regulation (FAR) states that the responsibility of the Contract Officer "is to ensur[e] performance of all necessary actions for effective contracting, ensur[e] compliance with the terms of the contract, and safeguar[d] the interests of the United States in its contractual relationships." Relatedly, Section 1.604 of the FAR states that the role of the Contracting officer's representative (COR) is to "assis[t] in the technical monitoring or administration of a contract."
[4] Mr. Hendrickson began his career working with the federal government, as both an employee and a contractor, in 1993 within intelligence agencies. Mr. Hendrickson joined the Department of Homeland Security in 2004. Since then, he has supported the Transportation Security Administration, the Department of Homeland Security Headquarters, Immigration and Customs Enforcement, and since 2006, Customs and Border Protection. As a federal employee beginning in 2008, Mr. Hendrickson has served as both an Information Technology Program Manager and a Contracting Officer Representative, managing and overseeing more than fifty IT hardware, software, infrastructure, network, and support services contract, three medical services contracts at the Southwest Border. Mr. Hendrickson is currently a COR for the surveillance technology tower system contract along the Southwest Border. Mr. Hendrickson holds the highest level of Contracting Officer Representative certification offered within DHS, Level III.

Exhibit 4 at Page 5

in holding Loyal Source accountable for the contractor's underperformance and non-adherence to medical standards.

# TIMELINE

## Initial Whistleblowing Activity

During his detail as the MSC COR, Mr. Hendrickson observed and reported failures on the part of Loyal Source and OA that he reasonably believed to be a violation of law, rule, or regulation; gross mismanagement; gross waste of funds; abuse of authority; and substantial and specific danger to public health or safety.

When he began his detail, many of these issues appeared to be caused by gross mismanagement by CO 1 who had the authority to direct staff to support the prior COR, including through the appointment of additional CORs to the MSC, but did not. This was of particular concern given the GAO's finding in its 2020 report that CBP medical funds were routinely spent on non-medical costs, and the accompanying recommendation that CBP needed to improve its spending oversight.

When Mr. Hendrickson reported his concerns to CO 1 and other OA staff, weeks and months would go by without resolution of important issues.

### *Medical Personnel with Improper Credentials, Expired Licensing, Inadequate Supervision, and Under Pending Investigation*

Within 2 weeks after Mr. Hendrickson began his detail, he began raising concerns to CO 1 based on reports he received from Border Patrol agents and other CBP staff, including that there were medical providers working in CBP facilities with expired licensing, with claims and investigations against them, with expired credentials, and/or with inadequate supervision. Mr. Hendrickson called meetings on these issues, and noticed that CO 1 seemed resistant to address problems. This was Mr. Hendrickson's first experience of CO 1's failure to hold Loyal Source to account for their contract performance.

### *Invoicing and Payment Without Required Supporting Documentation*

Also in August of 2021, Mr. Hendrickson saw that invoices in the millions of dollars had been paid without sufficient supporting documentation.[5] Mr. Hendrickson confirmed with both CO 1 and the CBP Office of Chief Counsel that he could request additional documentation from Loyal Source to support invoices, but problems with invoicing documentation persisted. In one example, personnel records were not accurately maintained between CBP and Loyal Source, which halted the payment of invoices. In another, Loyal Source employees failed to clock in and out of their shifts so there was

---

[5] Both the FAR and the Statement of Work of the MSC lay out the requirements for invoices. FAR section 32.905 states that invoices must include "Description, quantity, unit of measure, unit price, and extended price of supplies delivered or services performed," and "Any other information or documentation required by the contract." Additionally, section 3.5.7 of the MSC Statement of Work states that the contractor shall provide invoices which include, "itemized cost for each healthcare practitioner labor category by location with hourly times worked clearly delineated."

Exhibit 4 at Page 6

no proof that they had worked the hours that Loyal Source was billing CBP. It took months for CO 1 to approve the solution Mr. Hendrickson proposed to address this problem.

### Severe Understaffing of Critical Medical Services

Mr. Hendrickson's detail coincided with DHS' preparations for the termination of the application of Title 42 public health authority to the border. This meant that the agency anticipated the number of noncitizens presenting at the southern border would increase exponentially.

While OCMO had an urgent need to increase medical staffing to provide care for these noncitizens, Loyal Source failed to meet staffing requirements. Loyal Source was aware of the gravity of the staffing issue as they provided weekly reports to CBP about their ongoing vacancies.

#### CO 1 Refuses to Issue Loyal Source a Cure Letter at January 6, 2022 Meeting Despite Nearly 40% Understaffing

On January 6, 2022, Mr. Hendrickson organized an emergency meeting with OA and CBP Office of Chief Counsel (OCC) staff regarding Loyal Source's failure to staff CBP medical facilities. Mr. Hendrickson alerted CO 1, CO 2, and a CBP OCC attorney[6] that there were "entire shifts where no [medical] provider is available at all." Mr. Hendrickson asked CO1 to issue a Letter of Concern or a Cure Letter[7] to Loyal Source to "place them on official notice that they are not meeting contract performance scheduling, now into the third year."

Despite the risk of such high levels of understaffing of medical providers, CO 1 refused to issue a cure letter. Ultimately, Dr. Tarantino raised the issue to head of the Office of Acquisition; this senior official would not issue a cure letter over CO 1's refusal.

#### To Understand High Turnover Rates, OCMO Solicits Feedback from Former Loyal Source Employees

Because of the severe impact that understaffing and turnover were having on OCMO and CBP operations, CBP sent a survey to former Loyal Source employees asking why they left the company.

The issues noted by former staff included, for example: poor communication from management; mismanagement from senior management and HR as well as a lack of accountability for misconduct;

---

[6] One attorney from the CBP Office of Chief Counsel regularly advised on questions about the Medical Services Contract. All future references to "the OCC Attorney" are about this same person.

[7] FAR section 49.607 states "*Cure notice.* If a contract is to be terminated for default before the delivery date, a "Cure Notice" is required by the Default clause. Before using this notice, it must be ascertained that an amount of time equal to or greater than the period of "cure" remains in the contract delivery schedule or any extension to it. If the time remaining in the contract delivery schedule is not sufficient to permit a realistic "cure" period of 10 days or more, the "Cure Notice" should not be issued. The "Cure Notice" may be in the following format:
Cure Notice
You are notified that the Government considers your _____ [*specify the contractor's failure or failures*] a condition that is endangering performance of the contract. Therefore, unless this condition is cured within 10 days after receipt of this notice [*or insert any longer time that the Contracting Officer may consider reasonably necessary*], the
Government may terminate for default under the terms and conditions of the _____ [*insert clause title*] clause of this contract.
(End of notice)"

Exhibit 4 at Page 7

employees not showing up to scheduled shifts; failure to schedule employees within their availability despite short staffing; complaints and requests for more resources going ignored; below market pay rates; safety concerns associated with understaffing; and no response to concerns of employees falsifying medical records, among other problems.

### *Paper Medical Records Lead to Risk of Information Deficiencies*

By January 2022, a pattern emerged showing Loyal Source staff did not use the CBP provided Electronic Medical Records System (EMR) due to staff refusing to use it, internet outages, or Loyal Source management instructing staff to go offline during "surges" of the number of noncitizens in CBP custody. This failure to properly use the EMR conflicted with Loyal Source's representations that the company was using EMR and supported its use.

The failure to use the EMR was concerning to OCMO management who wanted consistent electronic records, especially to respond to records requests from oversight entities such as the Office of Immigration Detention Ombudsman (OIDO), the DHS Office of Civil Rights and Civil Liberties (CRCL), and the CBP Office of Chief Counsel. Mr. Hendrickson proposed solutions to this problem, but Loyal Source wanted to hire more staff to input the paper records it created into the EMR, which would require more funds from the OCMO budget. Loyal Source would not transfer the paper files without more funding, so the records remain in boxes in storage.

### *Loyal Source's Privacy Breach of Noncitizen Personally Identifiable Information*

In early 2022, Mr. Hendrickson learned that Loyal Source employees had engaged in privacy violations, with personally identifiable information of noncitizens transmitted outside of secured systems. When Mr. Hendrickson raised this problem to CO 1, she said there was nothing wrong and accused Mr. Hendrickson of looking for problems with Loyal Source.

Mr. Hendrickson reported the issue to the CBP Privacy Office on February 1, 2022. The Privacy Office opened an investigation, even considering suspension and debarment of Loyal Source, and found over 100 violations of personally identifiable information, including medical records of detained noncitizens going to personal cell phones and other devices, to Loyal Source's corporate system, and unauthorized email addresses.

## Loyal Source Government Services' Hazardous Understaffing of CBP Medical Services Converges with Issues of Gross Waste

The invoicing and understaffing issues about which Mr. Hendrickson raised concerns soon after he began his detail only worsened in the ensuing months. Proper staffing was critical to the OCMO mission especially while OCMO prepared for the wind-down of Title 42 in early 2022 and an increased need for CBP medical capacity. However, Loyal Source claimed the reason they could not meet staffing requirements was because they did not have enough money to pay employees competitively, and requested more funds to do so. Meanwhile, Loyal Source was effectively hemorrhaging the OCMO budget due to disproportionate overtime and other expenses, such as high per diem travel rates caused by Loyal Source shuffling employees between CBP medical sites to try and address understaffing. Furthermore, Mr. Hendrickson's investigations found that Loyal Source

Exhibit 4 at Page 8

was profiting heavily while their employee pay was low, and the government paid Loyal Source millions in delayed invoices caused by the company's errors.

### *Loyal Source's Inflated Profit Margins*

Mr. Hendrickson began raising concerns about Loyal Source's inflated profit margins given their low rates of employee pay as early as January 2022. Yet, Loyal Source frequently stated that the reason they could not maintain required staffing levels was because employees were leaving for jobs with higher pay and claimed that CBP needed to offer a COVID differential like other agencies did to recruit and retain staff. Mr. Hendrickson did market research to understand what the rates for medical professionals were and whether the COVID differential would help make rates more competitive. Through his research he learned that Loyal Source was paying employees under market rate, but Loyal Source's overhead and profit margins were disproportionately high.

On April 5, 2022, Mr. Hendrickson emailed Loyal Source, with CO 1 and other OCMO and OA personnel in copy, sharing his research and suggesting that given the urgent need to increase medical capacity given the imminent end of the use of Title 42 authority at the border, Loyal Source could consider adjusting its profit margins and using those funds to attract and retain staff. Mr. Hendrickson made clear, however, that CBP could not force Loyal Source to adjust its rates. Loyal Source refused to adjust their profit margins.

Mr. Hendrickson continued to seek solutions to the urgent staffing problems. Over the next week and a half, he emailed CO 1 seeking guidance and proposing solutions to the staffing shortages and low pay. However, CO 1 did not respond to these emails.

### *Loyal Source Accounting Error Caused Months of Billing Irregularities*

In the spring of 2022, the billing issues that Mr. Hendrickson identified in the fall of 2021 came to a head as he and OCMO learned that Loyal Source had not updated their internal accounting systems to reflect increased bill rates and were now seeking to recover $1.1 million from the OCMO budget for invoices with incorrect bill rates from August-November 2021. This amount increased to $1.6 million when Loyal Source submitted the invoices.

In light of the ongoing issues of underpayment of Loyal Source employees and the company's continued underperformance on the contract, Mr. Hendrickson suggested that CBP try to negotiate a reduced settlement amount rather than pay Loyal Source the full $1.6 million. He thought it was gross waste to pay a contractor additional funds when their expenses were already high and they were very clearly failing to meet the required contract terms. Eventually, however, the government paid Loyal Source the full amount.

## Mr. Hendrickson's Whistleblowing Activity and CO 1's Negligence Escalate in the Spring of 2022 as Mr. Hendrickson Attempts to Use the Contractor Performance Assessment Reporting System (CPARS) to Hold Loyal Source Accountable for Failures to Meet Contract Terms

Underscoring all the communication between Mr. Hendrickson and CO 1 was OCMO's need to meet medical service delivery standards and ensure that appropriate medical care was available to

Exhibit 4 at Page 9

noncitizens in CBP's custody per the 2020 GAO report and OCMO's mandate and mission. By 2022, there was a clear pattern in which OCMO sought to ensure that appropriate medical services were available and properly delivered via the contractor, Loyal Source, but felt hindered by their lack of authority to enforce the contract. This authority was held by OA staff – most specifically CO 1 – who were hesitant to hold Loyal Source to the performance measures CMO Tarantino felt necessary to meet medical ethics and care obligations. There was a tension between OA's focus on the plain language of the Scope of Work and conservative readings of the FAR and Dr. Tarantino's vision, based on his years of medical experience, about the level of contractor performance required to meet OCMO's mandate of safe and ethical medical service delivery. As a detailee with dual reporting to both CO 1 and CMO Tarantino, Mr. Hendrickson was caught in this tension, illustrated by his experience drafting the CPARS.

### *Overview of the Contractor Performance Assessment Reporting System*

The Contractor Performance Assessment Reporting System (CPARS) is a federal database of agency evaluations of federal contractors along with responses from contract recipients regarding contractor performance.[8] The intent of the CPARS is to provide an objective review of contractor performance for source selection of future contracts, including costs, scheduling, and ethics, along with other measures outlined in FAR section 42.1501. Notably, the CPARS aims to provide a balanced view of contractor performance by including not only agency assessments, but also an opportunity for the contractor to offer a response to any negative assessment.

In Mr. Hendrickson's years of experience, the COR writes the first draft of the agency's CPARS evaluation, working with the program management and technical team, then submits the draft via the CPARS system. At that point, the draft is no longer viewable to the COR and is sent to the CO, who provides a copy to the contractor for comment. The CO then sends the draft to upper-level officials in OA, who then publish the final evaluation within the CPARS system for source selection personnel from any federal agency to view the evaluation.

The FAR requires annual CPARS evaluations and permits interim evaluations; however, the terms of the Medical Services Contract required both annual and interim evaluations.

### *OCMO's Responsibility to Hold Loyal Source Accountable for the Company's Dangerous Underperformance*

At the previously referenced meeting on January 6, 2022, at which CO 1 refused to issue a cure letter to Loyal Source over CMO Tarantino's strong request, CO 1 and CMO Tarantino agreed that Mr. Hendrickson would draft a CPARS to reflect Loyal Source's performance. However, over the ensuing months, Mr. Hendrickson learned that the CPARS had been under-utilized as an evaluation tool for Loyal Source's performance in the Medical Services Contract and faced more stonewalling from CO 1 as he and OCMO tried to ensure that the CPARS was processed and finalized.

#### *No CPARS Ever Issued By OA*

In correspondence as Mr. Hendrickson was seeking access to the CPARS system, he learned that there was only a draft evaluation in CPARS for Period of Performance (POP) September 30, 2020 -

---

[8] https://cpars.gov/

Exhibit 4 at Page 10

September 29, 2021, and that no CPARS had been finalized and issued to the CPARS system for viewing by other agency source selection teams for the period of performance prior to 2020, nor were interim CPARS completed as required by the MSC.

### CO 1 Rated Loyal Source "Exceptional" in Unissued Draft CPARS Despite Performance Problems

Despite Loyal Source's ongoing staffing failures, among many other complaints reported, the draft CPARS completed by the prior COR and CO 1 listed all Loyal Source performance ratings as "Exceptional"[9] Further, Mr. Hendrickson learned that the draft CPARS for POP September 30, 2020 - September 29, 2021 had been submitted by the prior COR, without OCMO's knowledge and after Mr. Hendrickson had replaced the former COR as the new COR. It was concerning to OCMO that a CPARS draft would have been entered by the former COR and submitted to the CO without OCMO approval, and during a time, December 2021, when the former COR was no longer the COR on the MSC.

### OCMO Seeks to Issue CPARS and Downgrade Ratings

In correspondence in February and March of 2022, Mr. Hendrickson informed CO 1 that he and a team of twelve personnel from OCMO would complete a new draft of the CPARS for the POP ending September 29, 2021, and would also begin a first draft of an interim CPARS for the POP beginning September 30, 2021. He stated that this CPARS would likely downgrade the "excellent" ratings in the draft CPARS for the POP ending September 29, 2021. Mr. Hendrickson also made explicit that the CPARS he and OCMO had created should be expected to be a record for a potential GAO protest, audits, and OPR investigations, and that Loyal Source also knew OCMO was working on a draft CPARS.

CO 1 acknowledged Mr. Hendrickson's communications to this effect.

The new CPARS that the team of twelve OCMO personnel, including Mr. Hendrickson, drafted for the POP of September 30, 2020-September 29, 2021 lowered Loyal Source's ratings from "exceptional" to "unsatisfactory" and "marginal" with a recommendation against consideration of Loyal Source for future similar contracts.[10]

---

[9] A CPARS ratings chart used by OA indicates that a rating of "Exceptional" is appropriate when "performance meets contractual requirements and exceeds many to the Government's benefit" and that "there should have been NO significant weaknesses identified". [9] A CPARS ratings chart used by OA indicates that a rating of "Exceptional" is appropriate when "performance meets contractual requirements and exceeds many to the Government's benefit" and that "there should have been NO significant weaknesses identified."

[10] The CPARS rating guidance notes that a rating of "marginal" is appropriate when "performance does not meet some contractual requirements" and that the evaluation reflects a "serious problem" for which the contractor has not yet identified effective corrective action or the corrective actions have not yet been fully implemented. Additionally, a rating of "unsatisfactory" is appropriate when "performance does not meet most contractual requirements and recovery is not likely in a timely manner."

Exhibit 4 at Page 11

### *Mr. Hendrickson Submits Draft Downgraded CPARS to Support Ongoing OPR Investigations*

After Mr. Hendrickson submitted the version of the CPARS ratings he and the team of twelve drafted and approved together, Mr. Hendrickson no longer had access to the CPARS evaluation; it was then in the hands of CO 1. Mr. Hendrickson submitted this draft CPARS to the Joint Intake Center for inclusion in CBP OPR's investigations.

### *CO 1 Upgrades CPARS Ratings Against OCMO's Recommendations*

On April 18, 2022, Mr. Hendrickson asked CO 1 questions via email about the status of the CPARS, including whether the new CPARS for POP September 30, 2020 – September 29, 2021 had been issued to Loyal Source and whether there was a written response or acknowledgement from Loyal Source to the CPARS. CO 1 did not respond to this email.

At the time of his removal from the COR detail position, Mr. Hendrickson and OCMO staff were in the midst of drafting an interim CPARS for the POP beginning September 29, 2021, which noted ongoing deficiencies in Loyal Source' contract performance. Later, after CO 1 removed Mr. Hendrickson from his detail, OCMO learned that CO 1 upgraded the CPARS ratings about the September 30, 2020 – September 29, 2021 POP from "unsatisfactory" and "marginal" to "exceptional" and "very good."

## Retaliation

Mr. Hendrickson's attempts to address Loyal Source's deficiencies resulted in ire from CO 1 and his retaliatory removal as COR on the CBP MSC. Months passed with Mr. Hendrickson seeking input and guidance from CO 1 on solutions to address serious and hazardous underperformance by Loyal Source. Then, after Mr. Hendrickson reported CO 1's non-responsiveness to urgent OCMO needs to CO 1's Director, CO 1 suddenly terminated Mr. Hendrickson in April 2022.

The consequences for failures to hold Loyal Source to account for their failure to provide appropriate medical services were grave life and death situations; indeed the basis for the creation of OCMO was to address multiple deaths of children in CBP custody, and the outcome of Loyal Source's impunity was the death of another child, Anadith Reyes-Alvarez, in 2023.

### <u>Events Immediately Preceding CO 1's Retaliation</u>

In the weeks and days preceding Mr. Hendrickson's removal, several key instances of Mr. Hendrickson attempting to seek oversight of Loyal Source occurred, including some referenced in CO 1's email ending Mr. Hendrickson's COR appointment.

### *Loyal Source Fails to Report Incident of Sexual Harassment*

On April 16, 2022, there was an incident of alleged sexual harassment between Loyal Source staff who were working in a CBP medical unit. The employee felt unsafe, left their shift, and reported the incident to their Loyal Source chain of command and CBP site leadership. Local CBP leadership reported the incident to CBP Office of Professional Responsibility (OPR), who in turn informed OCMO leadership of the incident. Between April 25, 2022 and April 26, 2022, e-mail communication

Exhibit 4 at Page 12

between Mr. Hendrickson and Loyal Source on which CO 1 was copied showed Loyal Source claimed ignorance of the relevant policy which required reporting from Loyal Source management to CBP. Mr. Hendrickson made clear in this communication his reasonable belief that Loyal Source was in violation of FAR 52.203-13 and that he had informed the company on multiple occasions of their obligation to report such incidents to OCMO.

### *Executive Order*

Recognizing the ongoing and grave staffing shortages, and given the upcoming end of the Loyal Source contract term, the OCC attorney notified Mr. Hendrickson on April 21, 2022 of a new Executive Order stating that federal agency policy should be to hire the employees of a former contractor if a contract changes to a new vendor, and directed him to FAR 52.237-3 which states "[t]he Contractor shall allow as many personnel as practicable to remain on the job to help the successor maintain the continuity and consistency of the services required by this contract." In an effort to maintain morale of Loyal Source employees given ongoing staffing challenges, with OCMO approval Mr. Hendrickson then drafted an email to Loyal Source employees thanking them for their service and sharing the executive order along with a message that non-compete agreements would be overridden by the executive order. This email was later cited in CO 1's email removing Mr. Hendrickson from his COR position as a reason for his removal.

### *Mr. Hendrickson Reports His Concerns About CO 1's and CO 2's Gross Mismanagement on the Recompete Process to CO 1's Director*

At the same time that OCMO and Mr. Hendrickson were dealing with Loyal Source's underperformance, Mr. Hendrickson was leading preparations for a new five-year medical services contract to be awarded in July 2022. In this effort, Mr. Hendrickson similarly experienced delays from CO 1 in responding to questions and requests for CO 1's input and participation.

Beginning in November 2021, Mr. Hendrickson sent documents related to the recompete contract to CO 1; however, months had passed without CO 1's review or action on these documents, and the contract award date was looming. It was also understood at that time that CO 1 would soon be retiring, and given the ongoing and serious medical risks due to Loyal Source's underperformance on the Medical Services Contract, OCMO felt pressure to urgently begin working with whoever the new OA staff would be – including a new CO – to be successful in medical services delivery under the recompete contract.

On March 21, 2022, Mr. Hendrickson emailed CO 1's Director, effectively complaining about CO 1's poor performance to CO 1's boss. In his email, Mr. Hendrickson shared a timeline beginning in November 2021 of efforts to make progress on the recompete contract and CO 1's lack of response and participation. Referencing ongoing tension between OCMO and CO 1 and identifying CO 1 and CO 2 as the source of the ongoing contract issues with Loyal Source, Mr. Hendrickson wrote, "As you know, there is much negative history with the current Loyal Source contract, years of neglect, open investigations, privacy breach, invoicing issues, etc. We desire a fresh start with both CO and CS for the new contract."

### *CO 1's Director Shares Mr. Hendrickson's Concerns with CO 1, Culminating in a Hostile Meeting on April 25, 2022*

Exhibit 4 at Page 13

On March 24, 2022, CO 1's Director copied CO 1 into this email correspondence, making CO 1 aware of the performance complaints Mr. Hendrickson reported in his original March 21, 2022 email.

Ultimately, a meeting about the upcoming recompete and other matters was scheduled on April 25, 2022 and included CO 1's Director, CO 1, the OCC attorney, CMO Tarantino, and others from OCMO. A few days prior to the meeting on April 22, 2022, Mr. Hendrickson sent a message to the invitees alluding to the deterioration of communication between OCMO and OA, noting that it appeared the presence of CO 1's Director would be required to ensure everyone was on the "same page" about preparations for the recompete.

### OA Responds With Hostility to OCMO's Concerns About OA's Failures to Hold Loyal Source Accountable and Manage the Contract

The April 25, 2022 meeting had a comprehensive agenda, including the need to determine a plan to finalize the recompete before the July 29, 2022 award date, follow up on the status of the CPARS drafted by Mr. Hendrickson and OCMO, Loyal Source housing expenses implicating issues of gross waste, and CMO Tarantino's request that, in an emergency, OCMO would be able to obtain a contract modification and use existing money from the MSC to fund the modification.[11]

During the meeting, CMO Tarantino did not hide his frustration about not only Loyal Source's underperformance, but also about delays in preparation for the recompete. CMO Tarantino complained that OCMO had provided necessary documentation for the recompete and that OA had not taken action on the documents, that there were performance and budget issues for which OCMO had requested a cure letter which CO 1 denied, and that contract modifications were necessary because OCMO was trying to open new medical units for Border Patrol, among other issues.

CO 1's response to CMO Tarantino's concerns was to say that CO 1 and CO 2 were busy and needed time to review the documents for the recompete, and that they had problems with the documents as written. CO 1 and CO 2 also pushed back on operational needs CMO Tarantino wanted included in the recompete, such as capacity to provide vaccinations, which was something he included based on instruction from DHS superiors who wanted OCMO to have that capacity. CO 1 additionally accused CMO Tarantino of trying to make the MSC a personal services contract by including more granularity, accountability, oversight, and reporting.

### Mr. Hendrickson Reports OA's Hostility and Refusal to Hold Loyal Source Accountable to OPR

The tone of the meeting was so hostile that following the conclusion of the meeting, Mr. Hendrickson emailed the CBP OPR Agent with concern. He stated that "it appears that contract folks are not happy with OCMO…. For reporting performance issues and seen as overstepping and are too hard on this vendor, who in their statement, are doing [a] 'quite well' job." He also noted that CO 1 said CO 1 had not sent the CPARS Mr. Hendrickson and OCMO drafted for POP September 29, 2020 – September

---

[11] This was a recurring issue for CMO Tarantino. Due to Loyal Source's understaffing rates, funds were left available in the OCMO budget. CMO Tarantino wished to access those funds to respond to urgent needs for new medical sites or increased staffing, but CO 1 insisted that a new pool of money be requested for any contract modification. This put CMO Tarantino in a position of having to justify additional funding requests to DHS superiors while funds in the OCMO budget sat untouched by Loyal Source. At the same time, Loyal Source was spending funds at a disproportionately high rate given its high vacancy rate.

Exhibit 4 at Page 14

30, 2021 to Loyal Source because CO 1 wanted to edit it, tone it down, and remove items. In his email, Mr. Hendrickson expressed concern that the CPARS was being softened to allow Loyal Source to obtain the recompete contract, and that he was worried about retaliation.

### CO 1 Removes Mr. Hendrickson From His COR Appointment

Three days following the tumultuous meeting between OCMO and OA, CO 1 sent Mr. Hendrickson a Notice of Removal via email, effectively terminating his MSC COR detail appointment.

#### CO 1's Removal of Mr. Hendrickson Violated Union Rules

Notably, this was the first instance of CO 1 informing Mr. Hendrickson in writing of any performance issue. Mr. Hendrickson had never received a written reprimand in his 14 years as a COR, including under CO 1. Mr. Hendrickson is a member of The National Treasury Employees Union, and Article 46 of the collective bargaining agreement states that prior to a termination, a union member should receive notice in writing and an opportunity to respond.

#### CO 1's Removal of Mr. Hendrickson Violates 5 U.S.C. § 2302

CO 1's termination of Mr. Hendrickson's COR appointment was a prohibited personnel practice in violation of 5 U.S.C. § 2302(b)(8) as it was taken in retaliation for his disclosures of information Mr. Hendrickson reasonably believed were violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, and because Mr. Hendrickson reported this information to CO 1's Director and to the CBP Joint Intake Center, collaborating in investigations by the CBP OPR.

### CO 1 Orders OCMO Not to Pursue a Supplemental Contract to Remedy Staffing Shortages

On April 28, 2022 at approximately 1:00 p.m., Mr. Hendrickson, following up on months of communication to address Loyal Source's persistent, known, and dangerous staffing shortages, sent an email to Senior Officials in CBP OA and CO 1, copying OCMO leadership, informing the OA team that OCMO would be calling other vendors for market research in search of a vendor to meet surge staffing needs in light of the end of Title 42. In response, less than half an hour after CO 1 sent the email terminating Mr. Hendrickson's COR appointment, CO 1 sent an email ordering OCMO to stand down from communicating with "ANY" contractors until further direction from a contracting officer.

### OCMO's Attempts to Keep Mr. Hendrickson as COR, Loyal Source Staffing Shortages Persist Despite Supplemental Small Business Contract, and Continued Retaliation

Because of his dual duties to OA as COR and to OCMO's Program Management Office, Mr. Hendrickson maintained his OCMO PMO duties following his removal from the COR position under CO 1. OCMO had been continuously satisfied with Mr. Hendrickson's performance and understood the risk to the OCMO mission of entering into a new contract with a new COR who would likely face a steep learning curve to familiarize themselves with OCMO and the MSC. OCMO sought to have Mr. Hendrickson appointed as the COR for both a supplemental Medical Services Contract and for the permanent OCMO COR position on the five-year recompete Medical Services Contract, but they were prohibited from doing so.

Exhibit 4 at Page 15

***Retaliation, Gross Waste and Mismanagement of the Supplemental Small Business
Contract to Address Staffing Shortages***

First, after Mr. Hendrickson raised CO 1's directive that OCMO stand down from pursuing a supplemental contract to leadership of the Procurement Directorate explaining the need for increased staffing, OCMO was approved to seek a supplemental contract. Mr. Hendrickson wrote the contract and was nominated to be the COR for it. In fact, OCMO leadership were told by Procurement leadership that Mr. Hendrickson would be approved for this position. However, CO 2 rejected Mr. Hendrickson's nomination and appointed a different COR.

The supplemental small business contract was approved and was awarded on July 1, 2022. The contract opportunity notification posted to the System for Award Management (sam.gov) stated that the supplemental small business contract could be awarded to up to two vendors. The two vendors considered for the contract were Life Health and Hamilton Staffing Solutions.

Hamilton Staffing Solutions had over 600 cleared medical personnel in their proposal available to staff OCMO operations, and they were recommended by the CBP small business liaison. However, COs 1 and 2 chose Life Health, purportedly because they partnered with Loyal Source. This partnership meant that Life Health was essentially relying on Loyal Source to provide staff for the supplemental small business contract, which defeated the purpose of the supplemental contract.

A few months later in December 2022, the contract was cancelled because Life Health was unable to provide any staff.

***Ongoing Retaliation in OCMO Program Management Duties***

Second, as Mr. Hendrickson continued his program management duties within OCMO, he conducted audits which continued to expose wrongdoing by COs 1 and 2. Mr. Hendrickson learned that nearly a third of OCMOs active medical units were never added to the MSC via a contract modification. This meant that the medical units were not contractually within the scope of the MSC, and that Loyal Source was invoicing for hundreds of millions of dollars for these units that were not on contract. Additionally, Privacy and other OPR investigations were initiated at some of these out-of-contract sites. It was CO 1's responsibility to have added these medical units to the MSC. Mr. Hendrickson reported this gross mismanagement, and possible gross waste of federal funds to OPR, the CBP Privacy Branch, and to the new MSC COR, and requested that proper contract modifications be completed. In response, CO 2 claimed that they had a list of sites that were added to the contract in 2020, but when Mr. Hendrickson asked to review the document, CO 2 did not produce it. In response to his ongoing whistleblowing activity, CO 1 continued to assign CORs to take over duties that Mr. Hendrickson was completing within the scope of his project management role.

***OA's Retaliation Against Mr. Hendrickson and OCMO, Refusing to Appoint Hendrickson
as COR for Five Year Recompete Medical Services Contract***

Third, OCMO sought to have Mr. Hendrickson hired to the permanent COR position for the five-year recompete Medical Services Contract, which was an opportunity for a promotion. Mr. Hendrickson had been lead on the project of drafting the contract and was well positioned based on his experience with OCMO to fill the COR position. Mr. Hendrickson applied to the position OCMO in June 2022 and was told he would be interviewed. However, on July 6, 2022, CO 1's Director instructed OCMO

Exhibit 4 at Page 16

senior staff to withdraw the posting and not fill the position, claiming that only OA could hire full time CORs. OCMO took the issue to Human Resource Management, who agreed that the position was appropriately approved and informed OCMO to proceed with interviews and make a selection for hiring.

On August 10, 2022, Mr. Hendrickson was interviewed by a panel of three and was selected for the COR position based on his experience and qualifications. However, OCMO was informed that they needed to choose someone else because the Office of Acquisition would not work with Mr. Hendrickson. CMO Tarantino discussed this with senior leadership at OA explaining that Mr. Hendrickson was the most qualified candidate, but the decision stood.

Mr. Hendrickson's union representative also attempted to discern why OCMO was not able to have Mr. Hendrickson approved as the COR. On September 20, 2022, a CBP HR representative informed the union that Mr. Hendrickson was under investigation by OPR, which was the reason Mr. Hendrickson was not offered the COR position. However, neither Mr. Hendrickson nor NTEU has ever received notice of an OPR investigation against him.

### ***Ongoing Investigations Validate Mr. Hendrickson's Disclosures***

Following Mr. Hendrickson's termination, several investigations have continued into the issues about which Mr. Hendrickson blew the whistle. For instance, the DHS Office of Immigration Detention Ombudsman (OIDO) issued an Ombudsman Alert[12] on July 12, 2022 about critical understaffing, and a report[13] on June 16, 2023 identifying continued understaffing and invoicing problems. OIDO has also requested information about correspondence between CO 1 and Loyal Source.[14]

The CBP OPR Investigative Operations Directorate opened a fraud investigation into Loyal Source's invoicing discrepancies, which has resulted in the termination of multiple Loyal Source personnel after they admitted to wrongdoing. Mr. Hendrickson has participated in this investigation as a witness. The Office of the Attorney General of Florida, where Loyal Source is headquartered, also initiated an investigation into Loyal Source and has submitted a petition to the GAO to seek suspension and debarment of Loyal Source from federal contracts.

Additionally, a remediation plan was issued to Loyal Source about the privacy breaches Mr. Hendrickson raised to the Privacy Office over CO 1's objections.

Furthermore, Loyal Source has continued to face scrutiny of its contract performance, especially after the tragic and preventable death of 8-year-old Anadith Reyes-Alvarez. On June 8, 2023, after CMO Tarantino was reassigned, then-Acting CMO Herbert O. Wolfe sent a memorandum to Acting CBP Commissioner Troy Miller with initial observations and recommended medical improvement

---

[12] Office of the Immigration Detention Ombudsman, "Ombudsman Alert: Critical Medical Understaffing on the Border," July 12, 2022, www.dhs.gov/sites/default/files/2022-07/OIDO%20Ombudsman%20Alert%20CBP%20Medical%20Contract%20Final_508.pdf
[13] Office of the Immigration Detention Ombudsman, "OIDO Review: CBP Medical Support Contract for Southwest Border and Tucson," June 16, 2023, https://www.dhs.gov/sites/default/files/2023-07/OIDO%20Review%20-%20CBP%20Medical%20Support%20Contract%20for%20Southwest%20Border%20and%20Tucson.pdf
[14] On August 12, 2022, after Mr. Hendrickson was removed from the COR position, but while he was still with OCMO in a program management capacity, CO 2 executed a new Scope of Work with higher bill rates without issuing a required contract modification.

Exhibit 4 at Page 17

actions.[15] Notably, the memorandum outlined concerns that significant medical events were inadequately reported, that the EMR was underutilized, and found that the Border Patrol facility "lacked sufficient medical engagement and accountability to ensure safe, effective, humane and well-documented medical care." These findings align directly with Mr. Hendrickson's concerns about Loyal Source including failures to report privacy breaches and sexual harassment, and failure to use the EMR, which CO 1 said could not be addressed because in CO 1's interpretation the MSC Scope Of Work did not explicitly require its use. Importantly, the findings validate OCMO and Mr. Hendrickson's efforts to address Loyal Source's contract operations despite CO 1's accusations that such efforts were inappropriate and unnecessary.

Finally, CBP issued a cure letter to Loyal Source on August 10, 2023, **over 2 years** after he and CMO Tarantino requested that CO 1 do so.[16] The cure letter reportedly included many of the deficiencies Mr. Hendrickson raised as MSC COR including understaffing, cost management, and failure to use the EMR.

Mr. Hendrickson is not aware of a CPARS ever having been submitted for Loyal Source.

### *Concerns of Serious Oversight Failures by GAO, OSC, DHS OIG, and CBP EEO*

Mr. Hendrickson has sought accountability for both the retaliation he experienced by Office of Acquisition staff, namely CO 1, CO 2, and their Director, as well as the dangerous lack of oversight of Loyal Source's performance on the CBP Medical Services Contract, with multiple oversight entities. To date, over two years following his termination, and months after another child died in CBP custody due to medical neglect, these complaints have not been investigated or resolved.

First, immediately after he received CO 1's termination email, Mr. Hendrickson filed an email complaint to the CBP Equal Employment Opportunity mailbox. Mr. Hendrickson supplemented that complaint when he was denied COR positions with OCMO following his removal from his detail position. In July of 2022, Mr. Hendrickson attempted mediation of his EEO complaint, but the Office of Acquisition sent CO 1's Director, one of the OA staff who participated in retaliation against Mr. Hendrickson, as its representative, so Mr. Hendrickson was unable to participate in the mediation. Then, over two years after the submission of his complaint, on July 24, 2023, Mr. Hendrickson suddenly received an email from an EEO investigator requesting his response to a lengthy 116-question questionnaire within approximately two weeks, by August 8, 2023. Mr. Hendrickson provided the required information, but no substantive updates have been provided, nor have the witnesses Mr. Hendrickson shared been contacted.

Mr. Hendrickson additionally filed a retaliation complaint with the DHS OIG. The OIG closed his retaliation case on May 3, 2022, suggesting he file with the OSC.

Mr. Hendrickson filed a *pro se* retaliation complaint with the OSC in 2021, which was opened and pending without investigation until September 13, 2023, when Government Accountability Project

---

[15] Nick Miroff, "Inquiry after girl's death reports unsafe medical care in U.S. border facilities," *Washington Post* (June 22, 2023), https://www.washingtonpost.com/immigration/2023/06/22/medical-care-unsafe-border-facilities-migrants/.
[16] Nick Miroff, "Medical provider vying for border contract faces scrutiny after girl's death," *Washington Post* (November 19, 2023), https://www.washingtonpost.com/immigration/2023/11/19/border-loyal-source-medical-care-migrants/.

Exhibit 4 at Page 18

entered as Mr. Hendrickson's counsel requested a status update on the matter. Mr. Hendrickson and counsel were then informed that the investigator had transitioned to a new role, though Mr. Hendrickson had not been informed of this change, and a new investigator would be assigned. Mr. Hendrickson also filed a disclosure with the OSC, which the OSC closed on September 28, 2022 citing the ongoing agency investigations and GAO oversight efforts.

However, Mr. Hendrickson had filed a complaint to the GAO, the office that issued the report which led to the creation of OCMO, but was told on August 17, 2022 that "the situation you describe is not within the scope of any ongoing GAO work."

Finally, Mr. Hendrickson has engaged with Congressional offices regarding his disclosures and retaliation, including Representative Gerald Connolly, Representative Abigale Spanberger, and the House Republican Policy Committee.

## CONCLUSION

Despite Mr. Hendrickson's efforts beginning in August 2021 to engage CO 1 in efforts to hold Loyal Source accountable for the contractor's dangerous underperformance, CO 1 instead delayed responses to Mr. Hendrickson and resisted oversight actions such as issuance of a cure letter or finalizing an accurate CPARS. Then, after OCMO and Mr. Hendrickson's efforts escalated in April 2022, including by making explicit complaints CO 1's Director, CO 1 retaliated against Mr. Hendrickson by removing him as COR without warning as stated by union rules, and citing erroneous or mischaracterized reasons for his removal. Over a year after Mr. Hendrickson's removal, another child died in CBP custody due to insufficient medical services. Only after this preventable death, drawing public attention and prompting new investigations into the quality of CBP medical care, did CO 1 implement any accountability measures toward Loyal Source.

CO 1's choice to retaliate against Mr. Hendrickson for his efforts to expose fraud, waste, mismanagement and abuse by both Loyal Source and the Office of Acquisition resulted not only in adverse consequences to Mr. Hendrickson, but also to an eight-year-old girl and her family. Worse, Loyal Source Government Services continues to be responsible for the provision of medical care for noncitizens in CBP custody despite these failures of performance for which current Office of Acquisition officials overseeing the Medical Services Contract have failed to hold them accountable, costing taxpayers millions of dollars and endangering lives.

Accordingly, we urge Congress to do the following:

- Conduct thorough and prompt oversight into Loyal Source and its ongoing failure to comply with mandated medical care of noncitizens in CBP custody, endangering lives while reaping millions in taxpayer dollars;
- Conduct thorough and prompt oversight into the Office of Acquisition's gross mismanagement and abuse of authority by its refusal to hold Loyal Source accountable for its contract performance failures;
- Ensure that Mr. Hendrickson and any other current or former CBP or Loyal Source employees who have raised or may in the future raise concerns to Congress, internally to managers, to investigators and/or enforcement agencies, or to any other

Exhibit 4 at Page 19

protected recipients, are neither unlawfully restricted or chilled from, nor subject to retaliation for, engaging in protected whistleblowing activity.

Respectfully Submitted,

/s/ Andrea Meza

_____

Andrea Meza, Immigration Counsel
Dana L. Gold, Senior Counsel
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 926-3311
AndreaM@whistleblower.org
DanaG@whistleblower.org
Attorneys for Mr. Troy Hendrickson

Cc:      Department of Homeland Security, Customs and Border Protection

         The White House